FROERER & ASSOCIATES, PLLC
**Zane S. Froerer (#10807)**
2755 Washington Blvd. Suite 2
Ogden, Utah 84401
Telephone: 801-389-1533
zane.froerer@froererlaw.com

Attorney for *Plaintiff*

---

### IN THE FEDERAL DISTRICT COURT FOR THE STATE OF UTAH

| | |
|---|---|
| PHUC NGUYEN, | **COMPLAINT** |
| Plaintiff, | |
| vs. | |
| STATE OF UTAH DEPARTMENT OF WORKFORCE SERVICES, | Case No.: |
| Defendant. | Judge: |

COMES NOW, the Plaintiff, by and through its attorney of record, Zane S. Froerer, and alleges as follows:

### I.    NATURE OF CLAIM

1. This is an action, brought by Plaintiff Phuc Nguyen against the State of Utah, Department of Workforce Services.  Plaintiff seeks declaratory, injunctive and other equitable relief, and compensatory and punitive damages, for the continued deprivation of rights afforded to him under the Civil Rights Act of 1871 and as further amended by Congress.

2. The Plaintiff has complied with the requirements of Utah State Law requiring the exhaustion of administrative remedies and is entitled to bring this claim before this Court.

3. The Plaintiff submits the following allegations as evidence of the discriminatory and disparate treatment that is the result of Defendant's pattern and practice of racial, ethnic, and national origin discrimination:

   a. The Departments performance evaluation system is supervised and implemented by managers exercising undue authority to make biased and inconsistent determinations with little or no oversight. Managers are allowed to take files and shift them between employees, excuse mistakes or errors without adequate rule or guidelines, and shift the responsibilities for errors from one employee to another. This permits managers and directors to discriminate on the basis of race, national origin, and ethnicity regarding raises, bonuses, promotions, advancement, telecommuting contracts, and on the job training;

   b. This systematic disparate treatment was extensively documented in an audit by the State of Utah which audit is attached as Exhibit A and incorporated herein by reference;

   c. This disparate treatment has resulted in racial, ethnic, and national origin minorities being deprived of equal opportunities within the Department;

   d. There also exists a culture of nepotism and cronyism in the hiring and promotional practices within the Department;

   e. This culture tends to favor Caucasians who associate with each other on a more frequent basis outside of work either through religious activities, social activities, familial relationships, or other settings where Caucasians are the predominant participants;

f. The disparate treatment that results is that there is a significant impact upon the hiring and promotion of minorities within the department because Caucasians tend to be in managerial and supervisory positions. They hire and promote those who are related to other managers and supervisors who also tend to be Caucasian. Individuals who have familiar appearances, social practices, and close relations are frequently hired and promoted who also tend to be Caucasian.

g. The result is a disparate impact on the hiring and promoting of racial, national origin, and ethnic minorities regarding hiring and promotions within the Department;

h. The promotion policies are not applied uniformly or fairly. The Department has policies and rules for posting promotions; however, these policies are either done as a façade while a predetermined applicant is awarded a promotion or they are ignored. Candidates are handpicked in advance by supervisors who make hiring decisions disregarding panel interview or in collusion with the panelists, scores and evaluations are manipulated to ensure the favorites are chosen. The result is discrimination against ethnic, racial, and national origin minorities who are denied the opportunities to advance to the same level and at the same frequency as qualified Caucasians;

i. Specifically, employees of Asian racial, ethnic, or national origin have been disparately impacted by the Department's systematic discrimination;

j. When minorities do seek to enforce their right to equal opportunity, the Defendant takes retaliatory action to punish and discourage such action.

4. This discrimination is represented Department-wide and is evidenced in pervasive patterns and practices rather than a series of isolated incidents. These practices, both written and unwritten, subject the Plaintiff to ongoing discrimination and disparate impact. The Department's actions constitute a continuing violation of the Plaintiff's rights and have been ongoing since November 1991.

## II.  JURISDICTION

5. This Court has jurisdiction of this matter pursuant to 28 U.S.C. §1343(4), which confers original jurisdiction upon this Court for a civil action to enforce and recover damages and secure equitable relief under any Act of Congress providing for the protection of civil rights and pursuant to 28 U.S.C. §1331 which confers original jurisdiction upon this Court in a civil action arising under the Constitution or laws of the United States.

6. Venue is proper in this District pursuant to 28 U.S.C. §1391 because the Defendant is located within the State of Utah and conducts business within the District of the State of Utah and because the cause of action has arisen and occurred within the District of Utah.

## III.  PARTIES

7. The Plaintiff is Phuc Nguyen who is an Vietnamese immigrant employed with the Utah State Department of Workforce Services. He has been an employee since November 1991 and during that time, despite receiving above average or excellent evaluations, has never been promoted. The Plaintiff has repeatedly applied for promotion, been interviewed for promotion, and made efforts to improve his position within the Department.

8. The Defendant is the Utah State Department of Workforce Services and its Director Jon Peinpont.

## IV. <u>FACTUAL ALLEGATIONS</u>

9. The Plaintiff incorporates all prior allegations as if set forth fully below.

10. The Plaintiff was first hired by the Department on November 1991.

11. The Plaintiff was hired to provide and his duties continue to be customer service to applicants who are seeking state assistance such as food stamps, subsidies for insurance, etc.

12. The Plaintiff is assigned files of applicants to process and to assist through the application process.

13. The Plaintiff must work with applicants to gather the necessary information from them to determine whether they qualify for the benefits they are seeking and have applied for.

14. Often times the applicants are unable or unwilling to provide the necessary information or are unresponsive to the Plaintiff's requests for the information.

15. Much of the success of each application and file is beyond the Plaintiff's control.

## A. PERFORMANCE EVALUATION SYSTEM

16. The Department relied and continues to rely upon a flawed evaluation system that allows managers to favor some employees and punish others arbitrarily, capriciously, and in a discriminatory manner.

17. Employees similarly situated to the Plaintiff are evaluated on how may files, applications, they close and the number of errors that are made in the files they administer.

18. Employees and managers earn bonuses based upon the number of applications processed and the number of applicants who are approved for state assistance.

19. This encourages managers and employees to go beyond the applications submitted and to apply process applicants for benefits not covered in the applications.

20. The system also creates an incentive for managers to favor particular employees over others by reassigning files that are nearly closed and without error to a favored employee so that said employees performance meets the bonus criteria.

21. The system also creates an incentive for managers to shift problem files from favored employees to less favored employees.

22. Because managers are allowed to reassign any file at any time, they can affect all employees' abilities to receive bonuses, receive good revaluations, and to be promoted.

23. On several occasions, the Plaintiff has had simple and apparently "good" files reassigned from him while receiving difficult files that require substantial, long term work.

24. On one specific occasion, the Plaintiff was assigned a file that had been previously worked by a different employee.

25. The Plaintiff reviewed the case and found a critical error which he fixed.

26. The Plaintiff had nothing to do with the file at the time the error was committed; however, because it was assigned to him at the time of an audit the error was attributed against his performance evaluation.

27. This isolated incident is repeated several times a day throughout the Department with the sanction of management and directors.

28. As a result of the manipulations that managers are permitted, the Plaintiff was deprived of his telecommuting contract.

29. Whereas other similarly situated Caucasian employees were allowed to either transfer to a different section of the Department or offered remedial training.

30. The Department uses a tracking system to help employees administer the files and applications.

31. This system generates tasks and employees can also generate their own tasks.

32. Sometimes, the tasks generated are redundant or repetitive of other tasks.

33. Many employees make a practice of closing out such tasks without taking any individual action on them because of their redundant nature.

34. Plaintiff was supervised by a manager that not only allowed this but encouraged this even though it is against Department policy.

35. When a new manager was assigned to supervise Plaintiff, this practice was changed.

## B. RETALIATION

36. When the Plaintiff filed a grievance with the Department alleging that the termination of his telecommuting contract was racial, ethnic and national origin discrimination, his manager immediately retaliated with an accusation that he had been fabricating and misrepresenting the time he was working.

37. The evidence she produced was based upon the Tracking System's records.

38. The Tracking System only tracks the time that an employee spends on the computer working the files.

39. It doesn't track the time an employee spends sending emails or making phone calls.

40. Phone calls and emails constitute a significant portion of the Plaintiff's time because he is working with applicants to process the files.

41. This limitation is commonly known within the Department.

42. However, the manager relied exclusively upon the work times in the Tracking System to suspend the Plaintiff without pay.

43. This suspension immediately followed the Plaintiff's grievance filing of racial discrimination.

44. This manager also went back into the Plaintiff's past performance and determined that the Plaintiff had been clearing redundant tasks, a common practice within the Department.

45. Despite the Plaintiff's previous supervisor encouraging this, this new manager initiated another performance evaluation of the Plaintiff and had him written up for this action.

46. No Caucasian employee who was similarly situated has had their past performance combed through by this manager and evaluated as was the Plaintiff.

### C. DISPARATE PROMOTION OPPORTUNITIES

47. The Plaintiff has worked with the Department since his hire date of November 1991.

48. During that time, the Plaintiff has made numerous applications seeking intra-Departmental promotions.

49. However, while Caucasians who were similarly situated have been promoted and now hold high managerial positions, the Plaintiff has never been promoted.

50. The Plaintiff frequently is asked to train new hires who are then promptly promoted to managerial or higher paying positions.

51. When positions are posted, the interview process is merely a façade so that the Department can give the appearance of fairness while favorites and relatives are hired or promoted.

52. Because the Department has a policy to prohibit and discourage nepotism, managers will collude to hire other managers relatives and spouses.

53. Because managers are overwhelmingly Caucasian, this practice has had a significant disparate impact upon the Plaintiff.

54. Managers have also been allowed to manipulate the evaluations and audits by reassigning files and by excusing errors arbitrarily.

55. A manager may excuse any particular error and override the evaluation system.

56. This discretion allows managers to subvert the system's efforts to promote based upon merit and has had a disparate impact upon the Plaintiff's ability to be promoted and improve his employment status compared to other similarly situated Caucasians.

### D.  AUDIT

57. Following an extensive audit performed by an independent Department of the State of Utah, the Department began a process of concealing and destroying evidence and records that demonstrated the evidence of disparate impact.

58. That audit found substantial evidence of managers manipulating the evaluation and promotion process for their own benefit and the benefit of favorites.

59. The audit does not address the disparate impact these practices had upon minorities, but it does wholly support the prior grievances filed by the Plaintiff and the defense he

presented against any disciplinary actions recommended and imposed by his managers and the Department.

V.     <u>CLAIMS FOR RELIEF</u>

**Count One: Discrimination against the Plaintiff as a member of a protected class**

60. The Plaintiff incorporates all prior allegations as if set forth in full below.

61. The Defendant has intentionally discriminated against the Plaintiff in violation of Section 1981 of the Civil Rights Act by a pattern and practice of promoting minorities similarly situated to the Plaintiff less often than Caucasians; paying minorities similarly situated to the Plaintiff less in salary, bonuses, and benefits; giving minorities similarly situated to the Plaintiff lower evaluations on the basis of race, national origin and ethnicity; and denying Asians as well as other similarly situated minorities equal terms and conditions of employment.

<b>Count Two: Racially Disparate Impact</b>

62. The Plaintiff incorporates all prior allegations as if set forth in full below.

63. Defendants' policies and practices for evaluating employee performance, levels of compensation, qualifications for bonuses, and retention of employment have a disparate impact upon non-Caucasians and specifically but not exclusively, Asians similarly situated with the Plaintiff.

64. The Defendants' policies and practices for determining promotions have a disparate impact upon non-Caucasians, specifically exclusively, Asians similarly situated with the Plaintiff.

<b>Count Three: Intentional Discrimination against Plaintiff</b>

65. The Plaintiff incorporates all prior allegations as if set forth in full below.

66. The Plaintiff's supervisors and managers, individually and in collusion with one another, retaliated against the Plaintiff when he filed a grievance alleging that the termination of his telecommuting contract was discriminatory.

67. Defendant also engaged in this course of conduct as the Plaintiff's employer.

68. Defendant has intentionally discriminated against the Plaintiff by denying him equal terms and conditions of employment.

## VI.    PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that this Court enter judgment and order as follows:

1. That it is decreed and declared that the Defendant's acts and practices set forth herein are in violation of the laws of the United States;

2. That a preliminary and permanent injunction for relief as necessary to enjoin the Defendant's discriminatory conduct, practices, and policies from future harm to the Plaintiff shall be entered.

3. That the Plaintiff is awarded his lost wages, back pay, the value of lost or reduced benefits, commuting costs, pension, which resulted from the discrimination;

4. That the Plaintiff is awarded compensatory and punitive damages;

5. That the Plaintiff is awarded the costs of this action, including witness fees, expert witness fees, and reasonable attorney's fees;

6. That the Plaintiff is granted all further relief that this Court deems just and equitable.

Dated this 29th day of August, 2014.

FROERER & ASSOCIATES, PLLC


/s/ *Zane S. Froerer*
Zane S. Froerer
Attorney for Plaintiff